# Skiles's Appeal.

Where a father, who is insolvent, deeds property to his married daughter from natural love and affection, and the gift is accepted by the daughter and her husband in good faith and without knowledge of the donor's insolvency, and the son-in-law makes valuable improvements thereon, a court of equity, on the insolvency becoming known, will not order a reconveyance of the property without allowing the son-in-law for the amount expended by him upon the premises.

May 22d, 1885. Before MERCUR, C. J., GORDON, TRUNKEY and GREEN, JJ. PAXSON, STERRETT and CLARK, JJ., absent.

APPEAL from a decree of the Court of Common Pleas of *Lancaster county :* Of July Term 1885, No. 3.

This was an appeal by John D. Skiles, administrator of the estate of Amos S. Henderson, deceased. from a decree of said court ordering a reconveyance to said Skiles of property conveyed by said decedent to his daughter, Lizzie H. Nauman, and that the same be sold, and out of the proceeds thereof the administrator pay to George Nauman, the husband of said Lizzie H. Nauman, the amount paid by him for improvements on said property.

Bill in equity, wherein John D. Skiles, administrator as

aforesaid, was complainant, and George Nauman and Lizzie
H., his wife, were defendants.

The bill alleged as follows : that complainant had been duly
appointed the administrator of Amos S. Henderson, deceased;
that said Henderson died on January 13th, 1885, insolvent;
that previous to May 7th, 1883, Henderson was the owner of a
lot on East King street in the city of Lancaster ; that on May
7th, Henderson conveyed the said lot to his daughter, Lizzie
H. Nauman, in consideration of natural love and affection.
That, at the time of this conveyance, the said Henderson was
engaged in the banking business, was in very good credit and
continued so up to the time of his death, when his insolvent
condition was first discovered and that this insolvency, as
complainant believed, existed prior to the date of the deed to
Lizzie H. Nauman.    That when demand was made on the de-
fendants for a reconveyance of said premises, they did not
refuse to make one, but claimed that said conveyance was
accepted by them in good faith, and without any knowledge
or any reason to believe that said Amos S. Henderson was
insolvent and that, as George Nauman had made valuable im-
provements on this property to the value of about $5,000, they
should first be compensated for the same.

The bill prayed that the deed by Henderson to Lizzie H.
Nauman be declared void and that defendants be ordered to
make a reconveyance of this property to complainant.

The answer of defendants admitted the above facts, and
alleged, further, that they had occupied the house from 1869
to 1883, paying full rental value therefor and that the same
was assessed in the name of George Nauman, who paid the
taxes for the same.    That in 1883, the said house having be-
come too small for their family, they proposed to move, when
Henderson offered to convey and did convey the said property
to Lizzie H. Nauman ; that they accepted the same and the
said George Nauman made extensive improvements upon the
same of the value of $4,762.05.    That after said conveyance,
George Nauman agreed, by parol, to continue to pay Hender-
son during his lifetime an annual rental of $250.    That they
accepted the deed in perfectly good faith and without any
knowledge that Henderson was insolvent, and that they were
willing to make the reconveyance on condition that they be
allowed the sum expended by them in improving the premises.

Upon a hearing on bill and answer, the court ordered the
land to be reconveyed ; that it be sold for the payment of
debts and that out of the purchase money the administrator
should pay to George Nauman the sum expended by him upon
the premises.    The opinion of LIVINGSTON, P. J., was as fol-
lows :

On the hearing we were in doubt as to whether or not a court of equity should entertain this bill—it partakes so much of the nature of a mere ejectment bill—is not filed by creditors, but by an administrator, who has filed no account, nor applied for an order to sell the real estate of the decedent for payment of debts: Richard's Appeal, 4 Out. 51; 92 Pa. St., 168; 93 Id., 50; 1 D. Chipman, 331; 7, Johns, 161; Peasley *v.* Barney, 6 American Dec., 743; Bank *v.* Maguire, 39 Leg. Int., 168.

But, inasmuch as the Supreme Court, in Fowler's Appeal, has said, that where a debtor dies, under the Acts which provide (as in Pennsylvania) that all debts of a decedent shall be a lien upon his real estate for a period of five years after his death, a bill of equity will lie on the part of creditors who have not reduced their claims to judgment against one to whom the decedent, in his lifetime, had conveyed land in fraud of said creditors: 6 Norris, 449. And in Ulrich's Appeal: That administrators having an order from the Orphans' Court, to sell the real estate of a decedent for the payment of his debts, are the proper parties to file a bill in equity against a third person, in whose name the title stands, in order to compel him to make a conveyance to the purchaser: 2 Penny, 455. And, as it is admitted by the bill and answer, that it will become necessary for the administrator to sell all decedent's real estate to pay his debts ; and all, including that described in the bill, will be insufficient to pay his debts in full, and the parties waive objections and desire us to consider and pass upon the case as presented, on bill and answer, we have concluded to do so, without further question.

It is not disputed that Amos S. Henderson was insolvent at the time of the making and delivery of the deed to his daughter, Mrs. Nauman, as alleged in the bill, nor is it denied that said deed is fraudulent and void as to the creditors of said Henderson—the answer of respondents raises no question concerning these points.

It is admitted by the bill and answer that, while the deed is void as to creditors, it was accepted without any fraud, or knowledge of the insolvency of the grantor, in perfect honesty and the utmost good faith by the grantee, Mrs. Nauman, his daughter, and her husband, George Nauman ; and that, after the delivery of said deed, said George Nauman, in perfect good faith, believing his wife to have a good title, and for the benefit of his wife and children, made valuable improvements to and enlarged the house on said premises, and in so doing, *bona fide*, expended the sum of $4,762.05.

And " The only question really raised by the bill and answer is, whether, or not, said George Nauman, should, on a sale of

said real estate for the benefit of the creditors of said Henderson, be allowed and repaid, out of the purchase money, the amount so expended by him in making said improvements?"

By the English, as well as American common law, it is held, that the true owner would recover his land in ejectment, without liability to pay for improvements which may have been made upon it by an occupant without title, as improvements annexed to the freehold the law deems part of it, and they pass with the recovery. Every occupant makes improvements at his peril, even if he acts under a *bona fide* belief of ownership—such is the rigid rule of the common law: 15 American Dec., 349; 16 Iowa, 444; 40 Id., 213; 2 Kent, *334.

The rule of the civil law was more liberal, and allowed one who had made improvements on land in his possession, under a *bona fide* belief that he was the owner of it, to exact full compensation for the value of such improvements, less the value of the use of the land, before he could be compelled to surrender it: Putnam v. Ritchie, 6 Paige, 404; 15 American Dec., 349.

Chancery, borrowing from the civil law, made the first innovation upon the common law doctrine, and it came at length to be held in equity, that when a *bona fide* possessor of property made meliorations and improvements upon it, in good faith, and under an honest belief of ownership, and the real owner was, for any reason, compelled to come into a court of equity, that court, applying the familiar maxim, that he who seeks equity must do equity, and adopting the civil law rule of natural equity, would compel him to pay for those improvements, or industrial accessions, not the full cost perhaps, but so far as they were permanently beneficial to the estate and enhanced its value: 15 American Dec., 350; 6 Paige, 390; Story on Equity, 779, A—779, B.; 2 Story's Reports, 605; 1 Id., 478; 8 Wheaton, 77; Tyler on Ejectment, 849; 1 Sawyer, 15; 39 Maryland, 281; 10 New Jersey Equity, (2d Stockton,) 115; 16 B. Monroe, 420; 10 American Dec., 731.

In Jackson v. Loomis, the Supreme Court of New York say: The value of permanent improvements made by an occupant under a *bona fide* purchase, may be allowed in an action for mesne profits, at least to the extent of the rents due to plaintiff: 4 Cowen, 168.

In Whitledge v. Wait, (Kentucky,) it is said, that a *bona fide* occupant of land, believing himself the owner, is entitled to be paid the enhanced value of the land by reason of his improvements made after, as well as before, the commencement of an action by which he was evicted: Sneed (Kentucky), 335; 2 American Dec., 721.

In Rucker, for Levick v. Abell, *et al.*, SIMPSON, J., says:

Where a son, under a verbal gift from the father, takes possession and improves lands, expecting the gift to be consummated, he is equitably entitled as against creditors to compensation for such improvements, and can hold a lien upon the land for the same, deducting the value of the use : 8 B. Monroe, 566.

If a plaintiff in equity (says Story) seeks the aid of the court to enforce his title against an innocent person who has made improvements on land, supposing himself to be the owner absolutely, that aid will be given him only upon the terms that he shall make due compensation to such innocent person to the extent of the benefits which will be received from those improvements : 2 Story on Equity, sec. 799, A ; sec. 385 ; sec. 389 ; sec. 1237.

In such case, if the plaintiff has fraudulently concealed his title, and has thereby misled the defendant, the title to this compensation is founded in the highest justice : 6 Paige, 390, 8 Wheaton, 1, Green *v.* Biddle.

In Sands, *et al. v.* Codwise, *et al.*, it is said, that a court of equity does not undertake to inflict a punishment ; it merely affords compensation or prevents fraud from producing an injury. Where a deed is valid between the parties and is fraudulent only as against creditors, the money paid by the purchaser is to be refunded : 4 Johns, 536.

In Jones *v.* Perry : That the title under which improvements are made, may be wholly null, without affecting the right of set-off, if the requisite *bona fides* exists : 10 Yerger, 59

In Ogle *v.* Lichteberger, LOWRIE, J., says : Where a father purchased land and paid part of the purchase money, and then gave it to his sons, which was a fraud upon creditors upon his part, but not so on the part of the sons, and the creditors afterwards sold the land on execution as the property of the father, it was held, that only so much of the title as the sons acquired by gift from the father could be pursued by his creditors ; that when the sons paid the balance of the purchase money, and got a deed for the land, they became substituted to the rights of the vendor, which before that, he had in the land ; that the sheriff's vendees, who were substituted for the creditors, had no other right against the sons than they would have had against the vendor, and could not claim the land without tendering the balance of the purchase money with interest : 1 American Law Register, 121.

In Dilworth *v.* Sinderling, the court say : Equity will not relieve against a party in possession under a defective title, unless an allowance be made for improvements, where improvements have been made *bona fide :* 2 American Dec., 725 ; 5 California, 319 ; 8 Bush, 636. And in Paull's Ex'rs. *v.*

Eldred & Hill: That where a party has such an equity arising out of the circumstances connected with his claim and possession as entitles him to compensation for improvements made, it constitutes an equitable lien; and a right to hold possession until it is satisfied: 5 Casey, 415.

From a review of the above cases, and many others we have examined, but deem it unnecessary to cite, it is, to our mind, perfectly clear, that while the deed of May 7th, 1883, is fraudulent and void as to creditors of Amos S. Henderson, by reason of his acts alone, and conveys no title to Mrs. Nauman, as against them—it having, as is admitted, been accepted by her, and her husband, in perfectly good faith, and without any knowledge of, or reason to suspect, the insolvency of the grantor—and the improvements having been made by respondent, George Nauman, *bona fide*, for the benefit of his wife and family, they being in possession, and he believing the title of his wife to be good and valid, he, the said George Nauman, is entitled, on a sale of said real estate by the administrator, for the benefit of the estate and creditors of said Amos S. Henderson, to be paid out of the purchase money the sum of $4,762.05, which amount is admitted to be the value of the improvements made by him thereon.

And now, March 31st, 1885, this case coming on to be heard at this term, upon bill and answer, and having been fully discussed before this court, by the learned counsel of complainant and respondent, the court doth adjudge, order and decree, that said deed of conveyance of May 7th, 1883, is void, and of no effect as against the creditors of Amos S. Henderson, deceased. That the respondents shall reconvey the real estate, in said deed described to John D. Skiles, administrator of the estate of Amos S. Henderson, deceased, for the use of the estate, and benefit of the creditors of said decedent. That said real estate be sold by said administrator for the payment of the debts of Amos S. Henderson, deceased. And that out of the purchase money of said real estate, John D. Skiles, the administrator, shall pay to George Nauman, one of respondents, the sum of $4,762.05, being the admitted value of improvements made by him on said real estate, subsequent to the date of the aforesaid deed of conveyance. The costs of this proceeding to be paid out of the estate of A. S. Henderson, deceased.

From this decree, the administrator took this appeal, assigning for error the action of the court in not decreeing a reconveyance without qualification, unless defendants pay to the administrator a fair price for the property at the date of its conveyance to them, said price to be fixed by a Master.

[Skiles *v.* Houston.]

*William Augustus Atlee* for appellant.—No allowance could
have been made for these improvements if the contest had
been . between these defendants and a creditor, who had ob-
tained judgment against Henderson in his lifetime, and hence,
as these defendants have acted in perfectly good faith, it is sub-
mitted that the most equitable method of settling the matter
would be a decree ordering the defendants to pay to the com-
plainant the value of the property at the time of the convey-
ance to them.

*George M.·Kline* (*J. Hay Brown, Samuel H. Reynolds* and
*H. M. North* with him), for appellees.—Nauman, being free
from all actual fraud, should be protected by a court of equity
and be reimbursed for his actual expenditures: Gilbert *v.*
Hoffman, 2 Watts, 66 ; McCaskey *v.* Graff, 11 Harris, 321;
Riddle *v.* Murphy, 7 S. & R., 236 ; Davidson *v.* Barclay, 13 P.
F. S., 406; Lewis *v.* Effinger, 6 Casey, 281.

The decree of the court below gives the creditors all they
can conscientiously ask for and makes a just return to the de-
fendants for the improvements innocently and honestly made.

The opinion of the court was filed June 1st, 1885.

PER CURIAM.—This case was heard in the court below on bill
and answer. It is conceded that the case is entirely free from
any intentional fraud on creditors or others. Such being the
fact, the powers of a chancellor should not be so exercised as to
do great injustice to an innocent and good faith vendee. With
the purest motives and best intentions he made large expendi-
tures. Equity is now satisfied by restoring, for the benefit of
the estate of the grantor, the property of so much value as
subsequent events have shown was improperly taken from the
creditors thereof. The opinion of the learned judge fully sus-
tains his conclusion.

Decree affirmed and appeal dismissed at the costs
of the appellant.