## D. E. RICE, JR., ET AL. v. JOHN RICE ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF LANCASTER
COUNTY.

Argued May 20, 1889—Decided May 29, 1889.

(*a*) In an action of ejectment, the defendants relied upon a deed from the father of plaintiffs and defendants, dated July 25, 1882. The plaintiffs showed that an inquest of lunacy on February 19, 1884, found that the grantor was insane, and had been since April 19, 1882.

(*b*) The defendants made offers to prove declarations by the grantor made within fifteen months of the date when the insanity, as found, began, and within eighteen months of the date of the disputed deed, that he intended to execute "this conveyance" or "a deed" to the defendants.

1. In regard to the competency of evidence as to the insanity of the maker, there is no difference in principle whether the controversy be concerning the validity of a deed or of a will, and in this case, the declarations were not too remote to be admissible.

2. Nor was the variance between the declarations offered and what the grantor subsequently in fact did, of any weight; for, if the declared intention had been to make a gift, the variance was immaterial, and it was proper for the jury to be informed what the grantor's intentions had been when his sanity was unquestioned.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 72 July Term 1888, Sup. Ct.; court below, No. 9 May Term 1884, C. P.

On April 19, 1884, John Rice, and five others, his brothers and sisters, brought ejectment against Daniel E. Rice, Jr., and Joseph S. Rice, to recover a tract of 63 acres in Bart township. Issue.

At the trial on April 27, 1887, the plaintiffs showed title in Daniel Rice, Sr., their father, by deed dated March 23, 1875, for the consideration of $4,725; that Daniel Rice, Sr., had died intestate on April 15, 1884, leaving the parties to the suit on both sides as his heirs at law. The plaintiffs then rested.

The defendants put in evidence a deed from Daniel Rice, Sr., to themselves dated July 25, 1882, for a consideration expressed

in the deed of $2,250, and that on the date of the deed Daniel
E. Rice, Jr., had executed a bond conditioned for the payment
of $60 annually to Daniel Rice, Sr., during his life, and after
his death to his widow, for life, and that a like bond had been
executed by Joseph S. Rice, with a like condition for the pay-
ment of $76 annually.

In rebuttal, the plaintiffs showed that on December 17, 1883,
proceedings in lunacy were instituted against Daniel Rice, Sr.,
and that on February 19, 1884, there was a finding by the in-
quest that he was of unsound mind and had been for one year
and nine months preceding the finding, that is from April,
1882.

To meet the plaintiffs' evidence as to mental incapacity, the
defendants called a number of witnesses.

Samuel Hughes, called for defendants:

Mr. Brown: We propose to ask this witness to repeat the
conversations that he had with Daniel Rice within a period of
six months preceding April, 1882, the time of the stroke of
paralysis, in which conversations Daniel Rice declared his in-
tention to execute this conveyance to Daniel and Joseph, giv-
ing his reasons therefor, namely: that they had done more for
him than his other children, and that he had spent enough on
the other children, naming them.

Objected to.

By the court: Objection sustained; exception.[1]

Henry Girvin, called for defendants:

Defendants offer to prove by this witness that he knew
Daniel Rice, Sr., intimately, for many years before his death,
and in the year 1881, when Rice was unquestionably of sound
mind, repeatedly heard him say that he, the said Daniel Rice,
Sr., intended to execute a deed to the defendants for the prop-
erty in controversy, giving his reasons for such intention.

Objected to.

By the court: Objection sustained; exception.[2]

The same offer was made, to be supported by Ellwood Knox,
called for defendants; objected to, and objection sustained;
exception.[3]

At the conclusion of the testimony, the court, PATTERSON,
J., instructed the jury, who returned a verdict in favor of the

plaintiffs for six eighths of the land in dispute.    Thereupon the
defendants took this writ, assigning as error:

1–3. The refusal of defendants' offers.[1 to 3]

*Mr. B. F. Davis* and *Mr. J. Hay Brown*, for the plaintiffs in
error.

*Mr. H. M. North* and *Mr. W. M. Franklin*, for the defend-
ants in error.

OPINION, MR. JUSTICE MITCHELL:

This case is clearly ruled by Irish v. Smith, 8 S. & R. 573.
In regard to the competency of evidence as to the sanity of the
maker, there is no difference in principle between a will and a
deed, and the authorities have not admitted any.

The case of Irish v. Smith arose upon a contest as to a will,
but the reasoning of C. J. TILGHMAN is equally applicable to
the case of a deed: " The will of 1814 was impeached on two
grounds: 1, for incapacity of the testator; 2, because it was
obtained by fraud and improper management.    In both points
of view, it was proper for the jury to be informed what had
been the testator's intentions when his understanding was un-
questionable."    And in Wilkinson v. Pearson, 23 Pa. 117, simi-
lar declarations were admitted in a contest as to the sanity of
the grantor in a deed, and KNOX, J., put the admissibility ex-
pressly upon the principles of Irish v. Smith.    In Chess v.
Chess, 1 P. & W. 32, the same principle was applied to the
much more doubtful case of declarations made subsequently to
the execution of the deed, the court holding on the authority
of Irish v. Smith that the evidence was competent on the ques-
tion of sanity.

The declarations offered in the present case seem to have
been excluded partly on the ground that they were too remote
in time, though what period of time the court fixed is not
clearly discoverable from the evidence printed in the paper
book.    It may be doubted if any limit of time can be abso-
lutely fixed in regard to declarations admitted for the purpose
in question, though of course the more remote they are the
less weight they will properly be entitled to.

The finding of the inquisition dated the insanity of Rice

from the stroke of paralysis in April, 1882, and the deed in controversy was made in July of the same year. The declarations offered were made in 1881 and the early part of 1882. None of them therefore was more than fifteen months before the alleged insanity began, or more than eighteen months before the disputed deed. They certainly were not too remote. In Wilkinson v. Pearson the interval was more than two years, but no question seems to have been raised on that ground.

Nor is the variance between the declarations offered and what Rice subsequently in fact did, of any weight. The first offer was of ". an intention to execute this conveyance," and was not open even to this argument. The others were of an intention to execute " a deed." There was not therefore any real variance at all. But even if the declared intention had been to make a gift, as it seems to have been regarded by counsel, it would have been an altogether immaterial variance, as the fact that a grantor made a better bargain for himself than he had declared his intention to do when unquestionably sane, was certainly some proof of his competency to know what he was doing when he did make the grant.

The rejection of this evidence was therefore erroneous.

Judgment reversed and venire de novo awarded.